[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15427
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-02040-KOB

JEFFREY GLOVER,

Plaintiff-Appellant,

versus

PATRICK R. DONAHOE,
Postmaster General of the United States Postal Service ("USPS")
in his official and individual capacity,
DARREN BUGGS,
Officer in Charge, USPS, in his official and individual capacity,
DERRICK KING,
Officer in charge/Postmaster, USPS,
in his official and individual capacity,
STEPHANIE JOHNSON,
204B Supervisor, USPS, in her official and individual capacity,
UNITED STATES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 16, 2015)


Before HULL, ROSENBAUM, and EDMONDSON, Circuit Judges.


In this employment discrimination case, Jeffrey Glover, a white United States Postal Service ("USPS") employee, appeals the dismissal of his amended complaint against Postmaster General Patrick Donahoe and three USPS employees, each sued in his individual and official capacities. No reversible error has been shown; we affirm.

Briefly stated, this case arises out of the USPS's investigation of a customer complaint against Glover: a black woman accused Glover of using a racial epithet and profanity toward her while Glover was on his postal route. During the investigation, Glover alleges that USPS employees began spreading rumors about Glover having cursed a customer. Glover was ultimately charged with inappropriate conduct, and his employment was terminated. Glover appealed the termination; and, five days after his termination took effect, a dispute resolution team overturned the termination and reinstated Glover's employment. After

2

Glover's reinstatement, Glover contends that Defendants failed to reactivate Glover's door-access code for two weeks and delayed payment of Glover's backpay for two weeks.

In his amended complaint, Glover purports to assert against Defendants six federal-law claims of employment discrimination and retaliation and two state-law claims for libel and slander. The United States Attorney, pursuant to 28 U.S.C. § 2679(d)(1), certified that all individual Defendants were acting within the scope of their employment at the time of the alleged libel and slander. As a result, the government sought to substitute the United States as a party for the individually-named defendants in Glover's state law libel and slander claims.

In a thorough and reasoned order, the district court (1) affirmed the United States Attorney's scope-of-employment certification, (2) substituted the United States for the individually-named Defendants in Glover's libel and slander claims; and (3) denied Glover's request for discovery and an evidentiary hearing. In a second detailed order, the district court granted Defendants' motion to dismiss Glover's complaint for lack of subject matter jurisdiction and for failure to state a claim.

I.  Libel and Slander Claims

On appeal, Glover first challenges the district court's substitution of the United States as a party in place of the individually-named defendants to Glover's libel and slander claims (Counts Six and Seven).

Under the Federal Tort Claims Act, the United States shall be substituted as the defendant in civil actions against federal employees "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. § 2679(d)(1).  If a plaintiff objects, the district court reviews de novo the United States Attorney's scope of employment certification.  S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir. 1990).  The plaintiff, however, bears "the burden of altering the status quo by proving that the employee acted outside the scope of employment."  Id.

The question of whether an employee acted within the scope of his employment for purposes of section 2679(d)(1) "is an issue governed by the law of the state where the incident occurred."  Id. at 1542.  Under Alabama law, "[a]n act is within an employee's scope of employment if the act is done as part of the duties the employee was hired to perform or if the act confers a benefit on his employer."  Hulbert v. State Farm Mut. Auto. Ins. Co., 723 So.2d 22, 23 (Ala. 1998).  The

4

dispositive question is whether, at the time of the alleged wrongdoing, "the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer." Id. at 24.

Here, the district court reviewed expressly the United States Attorney's certification under the proper de novo standard of review. Accepting the allegations in Glover's amended complaint as true -- and applying Alabama law -- the district court determined that Glover failed to satisfy his burden of proving that Defendants acted outside the scope of their employment. According to Glover's complaint, Defendants' alleged wrongful statements were made during the course of an official USPS investigation of a customer complaint against Glover: a duty that Defendants were hired to perform and that benefitted the USPS.

Moreover, nothing mandates that a district court allow discovery and hold an evidentiary hearing before ruling on a section 2679 certification. Discovery and an evidentiary hearing are particularly unnecessary in this case, where Glover alleged no facts to support his contention that Defendants were acting outside the scope of their employment at the time of the alleged wrongdoing.

The district court substituted properly the United States as a defendant to Glover's state-law libel and slander claims. As a result, Glover's state-law claims

were subject to dismissal for lack of subject matter jurisdiction.[1]  See 28 U.S.C. §

2680(h) (providing an exception to the United States' waiver of sovereign

immunity under the Federal Tort Claims Act for claims involving libel or slander);

JBP Acquisitions, L.P. v. United States ex rel. FDIC, 224 F.3d 1260, 1263-64

(11th Cir. 2000) (courts lack subject matter jurisdiction to consider claims against

the United States when the alleged conduct falls into one of the statutory

exceptions to the Federal Tort Claims Act).


II.  Federal Law Claims


Glover also challenges the district court's dismissal, under Fed.R.Civ.P.

12(b)(6), of four of his federal law claims.[2]  We review de novo a district court's

dismissal for failure to state a claim, accepting all alleged facts as true and

construing them in the light most favorable to the plaintiff.  Butler v. Sheriff of

Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012).

A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Although a Title VII

---

[1] Because Glover's libel and slander claims were dismissed properly for lack of subject matter jurisdiction, we need not consider whether these claims were also barred by Alabama's statute of limitations.

[2] On appeal, Glover fails to challenge the district court's dismissal of Counts Two and Eight: these claims are abandoned.  See Carmichael v. Kellogg, Brown & Root Serv., Inc., 572 F.3d 1271, 1293 (11th Cir. 2009).

complaint need not allege facts sufficient to make out a classic McDonnell Douglas[3] prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (quotation and citation omitted). In addition to containing well-pleaded factual allegations, complaints must also meet the "plausibility standard" set forth by the Supreme Court in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007), and in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). [4] This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotations omitted). Our analysis of the plausibility standard is "context-specific" and "requires [us] to draw on [our] judicial experience and common sense." Id. at 1950.

As an initial matter, claims under Title VII for employment discrimination and retaliation may be brought only against the head of an agency in his official capacity. See Canino v. United States EEOC, 707 F.2d 468, 472 (11th Cir. 1983).

---

[3] McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

[4] The district court recited and applied correctly the "plausibility standard" of review established in Twombly and Iqbal, including the court's obligation to accept the allegations in Glover's complaint as true. To the extent Glover challenges the constitutionality of the Supreme Court's "plausibility standard," that is no issue for this Court to decide; we are bound by the Supreme Court's decisions.

7

Thus, the only properly named defendant for Glover's Title VII claims is Postmaster General Donahoe, in his official capacity. The district court committed no error in dismissing Glover's Title VII claims against the three USPS employees and against Donahoe in his individual capacity.

About Glover's Title VII claim for race discrimination (Count One), the amended complaint creates no plausible inference of discrimination on account of Glover's race. Viewing the factual allegations in the amended complaint in the light most favorable to Glover, the USPS terminated Glover's employment based on false accusations by a black woman and a black witness that Glover used a racial slur and other offensive language while Glover was delivering mail. In other words, Glover's employment was terminated because of a customer complaint about Glover's conduct, not because of Glover's race.

Glover contends that (particularly because many of USPS's decision-makers are black) the "nature of the charge and the race of those [accusing Glover] caused the Defendants to be racially prejudiced against the Plaintiff and to act against him for racially discriminatory reasons . . . ." But Glover has identified no similarly-situated black employee who made racially-offensive remarks toward a customer and who was treated more favorably. Glover's allegations of race discrimination are purely speculative, and Glover has failed to "nudge[] his claims of invidious discrimination across the line from conceivable to plausible." See Iqbal, 129 S.Ct.

8

at 1950-51 (quotations omitted).  The district court concluded correctly that Glover failed to state a claim for race discrimination under Title VII.

About Glover's Title VII retaliation claim (Count Three), Glover failed to plead sufficient facts from which one could infer plausibly that a causal connection existed between Glover's statutorily-protected activity and Defendants' alleged retaliatory conduct.  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."  Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002).  Glover alleges that he twice requested to speak with the local postmaster and that he called the EEOC to complain about the spreading of rumors about his conduct.  Even assuming (without deciding) that Glover's acts constituted statutorily-protected activity, the amended complaint contains no allegation that the supposed adverse actions Glover suffered (including a delay in activating his door-entry code, a delay in receiving backpay, spreading of rumors, and having to continue working the same route where his accuser lived) were in any way related to Glover's protected activity.  Nor does Glover allege that the USPS decision-makers knew that Glover had contacted the EEOC or knew that Glover sought to report to the Postmaster a Title VII violation.

9

Glover has also failed to state a plausible claim under Title VII for hostile work environment. Taking the facts in the complaint as true and assuming Glover experienced some harassment, the harassment was not "sufficiently severe or pervasive to alter the conditions of [Glover's] employment and create an abusive working environment." See Harris v. Forklift Sys., 114 S.Ct. 367, 370 (1993).

About Glover's Count Four, the district court committed no error in dismissing Glover's claim that he was "entitled to obtain relief for all claims brought to the [EEOC]" when Glover failed to identify the claims he brought to the EEOC. In addition, to the extent Glover contends that his Count Four constitutes an alternate statement of his Title VII claims, Title VII is the only means by which a federal employee may bring a federal claim for illegal discrimination against his employer. See Canino, 707 F.2d at 472.

The district court also dismissed properly Glover's Bivens[5] claim (Count Five). USPS employees are precluded from raising Bivens claims arising from employment with the USPS. See McCollum v. Bolger, 794 F.2d 602, 607-08 (11th Cir. 1986).

AFFIRMED.

---

[5] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 91 S.Ct. 1999 (1971).